### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

TOWN OF THORNAPPLE, WISCONSIN; ANGELA
JOHNSON, RALPH C. KENYON, TOM ZELM, and
JACK ZUPAN, in their official capacities as Town
Clerk and Town Board Supervisors of the Town of
Thornapple; TOWN OF LAWRENCE, WISCONSIN;
CHARIDY LUDESCHER, BOB NAWROCKI,
STACY ZIMMER, and DUANE BILLER, in their
official capacities as Town Clerk and Town Board
Supervisors of the Town of Lawrence; and STATE OF
WISCONSIN,

        Defendants.

Civil Case No. 3:24-cv-664

**COMPLAINT**

Plaintiff United States of America alleges:

### INTRODUCTION

1.      The United States files this action for declaratory and injunctive relief to enforce

Section 301 of the Help America Vote Act of 2002 ("Section 301" and "HAVA"), 52 U.S.C.

§ 21081.  Section 301 requires, among other things, that each voting system used in an election

for federal office be accessible for voters with disabilities in a manner that provides the same

opportunity for access and participation, including privacy and independence, as for other

voters.[1]  To satisfy this requirement, voting systems used in federal elections must include at

---

[1] As used in this Complaint, a "voter with a disability" refers generally to voters with disabilities who, absent access
to an accessible voting system, would not enjoy "the same opportunity for access and participation . . . as for other
voters."  See 52 U.S.C. § 21081(a)(3)(A).

least one voting system equipped for individuals with disabilities at each polling place.  States

and their sub-jurisdictions must comply with Section 301 of HAVA, and Congress required

states to ensure statewide compliance with Section 301.  But the Town of Thornapple failed to

provide accessible voting systems for use by voters in Wisconsin's April 2, 2024, and August 13,

2024, federal primary elections.  And the Town of Lawrence failed to provide accessible voting

systems for use by voters in Wisconsin's April 2, 2024, federal primary election.  Those failures

violated Section 301 of HAVA.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331,

1345, and 2201(a) and 52 U.S.C. § 21111.

3.      Venue is proper in this Court under 28 U.S.C. §§ 130(b) and 1391(b) as both

towns are within the Western District of Wisconsin.

## PARTIES

4.      Plaintiff United States of America seeks declaratory and injunctive relief pursuant

to Section 401 of HAVA, 52 U.S.C. § 21111, which authorizes the Attorney General to bring a

civil action against any state or jurisdiction to enforce the requirements of Section 301 of HAVA.

5.      Defendant Town of Thornapple ("Thornapple") is a municipality in Rusk County

within the Western District of Wisconsin.  28 U.S.C. § 130(b).  Thornapple is governed by a

Town Board, which is empowered to decide "all affairs of the town not committed by law to

another body or officer or to a town employee."  Wis. Stat. § 60.22.  Wisconsin townships are

required to comply with Section 301 requirements.  52 U.S.C. § 21081(d).

6.      Defendant Angela Johnson is the Town Clerk for Thornapple.  Wisconsin's

municipal clerks are responsible for administering elections, including providing for the purchase

2

and maintenance of election equipment.  *See* Wis. Stat. § 7.15(1); *Wisconsin Election Administration Manual for Municipal Clerks* (Feb. 2024), at 5, 113 (hereinafter "Manual"), https://perma.cc/7R8Z-439D.  The Town Clerk shall "[p]erform the duties required by chs. 5 to 12 [of Wisconsin State law] relating to elections," Wis. Stat. § 60.33(4)(a), which includes ensuring that accessible voting machines are available to all electors to cast their ballots, *id.* § 5.25(4); Manual at 146.  Ms. Johnson is sued in her official capacity.

7.  Defendant Ralph C. Kenyon is Chairman of the Town Board of Thornapple.  Chairman Kenyon is sued in his official capacity.

8.  Defendant Tom Zelm is a member of the Town Board of Thornapple.  Supervisor Zelm is sued in his official capacity.

9.  Defendant Jack Zupan is a member of the Town Board of Thornapple.  Supervisor Zupan is sued in his official capacity.

10.  Defendant Town of Lawrence ("Lawrence") is a municipality in Rusk County within the Western District of Wisconsin.  28 U.S.C. § 130(b).  Lawrence is governed by a Town Board.  The Town is subject to Section 301 requirements.  52 U.S.C. § 21081(d).

11.  Defendant Charidy Ludescher is the Town Clerk for the Lawrence.  Ms. Ludescher is sued in her official capacity.

12.  Defendant Bob Nawrocki is Chairman of the Town Board of Lawrence.  Chairman Nawrocki is sued in his official capacity.

13.  Defendant Stacy Zimmer is a member of the Town Board of Lawrence.  Supervisor Zimmer is sued in her official capacity.

14.  Defendant Duane Biller is a member of the Town Board of Lawrence.  Supervisor Biller is sued in his official capacity.

15.     Defendant State of Wisconsin is a State of the United States of America and subject to the requirements of HAVA, including the voting system requirements of Section 301. 52 U.S.C. § 21081(d).

## ALLEGATIONS

**HAVA Section 301**

16.     Section 301 of HAVA directs state officials to meet certain general requirements for voting systems used in elections for federal office.  52 U.S.C. § 21081(a).

17.     A "voting system" under HAVA is defined to include the "(1) total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used . . . to cast and count votes . . . ."  52. U.S.C. § 21081(b)(1)(B).

18.     Among other things, Section 301 requires that each voting system used in an election for federal office "be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters."  52 U.S.C. § 21081(a)(3)(A).  To satisfy this requirement, any voting system in use on or after January 1, 2006, must include "at least one direct recording electronic voting system or other voting system equipped for individuals with disabilities at each polling place."  *Id.* § 21081(a)(3)(B), (d).

19.     HAVA sets minimum requirements for accessible voting systems for states to meet in conducting federal elections.  52 U.SC. § 21081(a)(3); *id.* § 21084.  The specific choices on the methods of complying with those requirements are left to each state's discretion.  *Id.* § 21085.

20.     Each state and each state sub-jurisdiction that administers elections must comply with Section 301 requirements.  52 U.S.C. § 21081(d).

21.     Section 301's minimum requirement for accessible voting systems at each polling place applies to all jurisdictions without regard to the size of the population within the jurisdiction and without regard to whether and how many voters with disabilities reside there.

22.     HAVA requires states to ensure statewide compliance with Section 301 requirements.  52 U.S.C. § 21004(a)(4) (requiring states to create a "state plan" for implementing HAVA-compliant voting system guidelines and processes, including accessible voting systems at every polling location, as a condition for receipt of HAVA funds); *id.* § 21003 (requiring states to certify compliance with the state plan with the U.S. Election Assistance Commission each fiscal year).

**Accessible Voting in Wisconsin**

23.     The U.S. Centers for Disease Control and Prevention estimate that 1,275,864 adults in Wisconsin—or 28% of the state's population—have a disability.  *See* U.S. Centers for Disease Control and Prevention, *Disability & Health U.S. State Profile Data for Wisconsin* (July 2024), https://perma.cc/22ZG-4PV8.  Many of these individuals have disabilities that can make voting more difficult: 11% of the state's adult population has a disability that seriously impairs mobility, and 8% of the population has a disability that impedes independent living.  *Id.*

24.     On June 14, 2024, the Wisconsin Elections Commission released a document regarding the use of electronic voting equipment in Wisconsin.  *See* Wisconsin Elections Commission, *Frequently Asked Questions Regarding the Use of Electronic Voting Equipment in Wisconsin Elections* (June 14, 2024), https://perma.cc/LX7S-KQR2.  That document clarified that a Wisconsin "municipality cannot entirely abandon all electronic [voting] equipment" while

"still comply[ing] with laws requiring each polling place to make accessible voting equipment available to voters." *Id.* at 2. The document further clarified that Wisconsin municipalities cannot satisfy these obligations by "provid[ing] a person with a disability an assistant in lieu of offering accessible voting equipment." *Id.*

**The ImageCast Evolution**

25.     Rusk County, Wisconsin, has purchased Dominion ImageCast Evolution ("ImageCast Evolution") voting systems for use by each municipality within Rusk County in the conduct of elections, including the Towns of Thornapple and Lawrence.

26.     The ImageCast Evolution can function as a tabulator, or counter, of votes cast. Wisconsin Elections Commission, *Final Commission Memo Test Report for Dominion D-Suite 5-5 C and 5-5CS* at 3 (June 2, 2021), https://elections.wi.gov/media/14401/download (hereinafter "Final Commission Memo").[2]

27.     The ImageCast Evolution can also function as a ballot marking device, that is, a device that records a voter's choices on a paper ballot prior to counting. Final Commission Memo at 3.[3]

28.     The United States Election Assistance Commission has certified the Dominion Voting Systems Democracy Suite 5.5-C, of which the ImageCast Evolution is a component, as

---

[2] Once the ImageCast Evolution has tabulated a ballot, the ballot is deposited into a secure storage bin at the base of the machine. Final Commission Memo at 3. The vote totals reported by the ImageCast Evolution can be verified against the actual cast ballots retrieved from the secure ballot box.

The vendor of the ImageCast Evolution offers devices that, when attached to the ImageCast Evolution, allow election results to be sent via encrypted, secure wireless transmission from the polling place to the election administrator's office. *Id.* Use of that external device is optional, and their use or non-use is not relevant to the HAVA violation at issue here. Neither Thornapple nor Lawrence use such devices to transmit election results, and the United States does not seek an order requiring the Towns to use wireless transmission for any purpose.

[3] When a voter uses the ImageCast Evolution's ballot-marking functionality to complete their ballot, the marked ballot is returned to the voter for review. Final Commission Memo at 4. Only after the voter has had an opportunity to view the marked ballot is the ballot again inserted into the ImageCast Evolution to be tabulated. *Id.*

6

having met an identified set of federal voting system standards, including those regarding

accessibility.  U.S. Election Assistance Comm'n, *Certificate of Conformance: Dominion Voting*

*Systems Democracy Suite 5.5-C* (July 9, 2020), https://perma.cc/6796-87BH.

29.     The Wisconsin Elections Commission has approved the Dominion Voting Systems

Democracy Suite 5.5-C, of which the ImageCast Evolution is a component, for use in conducting

elections in Wisconsin.  *See* Wisconsin Elections Commission, *Open Session Minutes* at 4-7

(June 2, 2021), https://perma.cc/FNJ4-VG7C.

**Town of Thornapple**

30.     On June 13, 2023, the Town Board of Thornapple (the "Thornapple Board") voted

to "stop use of the electronic voting machine and use paper ballots" ("June 13 decision").

31.     In elections preceding the June 13 decision, Thornapple used an ImageCast

Evolution machine to mark and tabulate votes during elections, including those for federal office.

32.     Thornapple implemented the June 13 decision by withholding the ImageCast

Evolution machine and instead making available only paper ballots for use by voters at the

Town's sole polling place during the April 2, 2024, federal primary election.

33.     Thornapple did not make available the ImageCast Evolution or any other

equipment that would enable a voter with a disability to mark a paper ballot privately and

independently at the Town's polling place during the April 2, 2024, federal election.

34.     Accordingly, for the April 2, 2024, federal primary election, Thornapple's polling

location lacked a voting system that was "accessible for individuals with disabilities, including

nonvisual accessibility for the blind and visually impaired, in a manner that provides the same

opportunity for access and participation (including privacy and independence) as for other

voters."  52 U.S.C. § 21081(a)(3)(A).

35.     Thornapple's Chief Election Officer, Suzanne Pinnow, characterized the Town's June 13, 2023, vote as one to "opt out of using 'voting machines or electronic voting systems.'"

36.     During the August 13, 2024, federal primary election, Thornapple again made available only paper ballots for use by voters at the Town's polling place.

37.     The Town of Thornapple again did not make available any equipment that would enable a voter with a disability to mark a paper ballot privately and independently at its polling place during the August 13, 2024, federal primary election.

38.     Thornapple's polling location thus lacked a voting system that was "accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters," 52 U.S.C. § 21081(a)(3)(A), during the August 13, 2024, federal primary election.

39.     The Thornapple Board has taken no official action to reverse or reconsider its June 2023 decision to eliminate the "use of the electronic voting machine and use paper ballots" in elections, including those for federal office.

**Town of Lawrence**

40.     On January 16, 2023, the Town Board of Lawrence (the "Lawrence Board") "decided [the Town] will not be turning on the voting machine" for a February 21, 2023, state primary election ("January 16 decision").  Charidy Ludescher, Lawrence's Town Clerk, took notes by hand at that meeting.

41.     Lawrence characterized the January 16 decision as one where the Lawrence Board decided to "simply not plug the voting machines in for the administration of elections" in Lawrence and "to opt out of using 'voting machines or electronic voting systems.'"

8

42.     Prior to the January 16 decision, Lawrence had used the ImageCast Evolution tabulator and ballot marking device to mark and tabulate votes during elections, including those for federal office.

43.     Lawrence did not use "voting machines or electronic voting systems" during the April 2, 2024, federal primary election.  Instead, the Town withheld the ImageCast Evolution machine and made available only paper ballots for use by voters at the Town's polling place during that federal primary election.

44.     Lawrence did not make available any equipment that would enable a voter with a disability to mark a paper ballot privately and independently at the Town's polling place during the April 2, 2024, federal primary election.

45.     For the April 2, 2024, federal primary election, Lawrence's sole polling location thus lacked a voting system that was "accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters."  52 U.S.C. § 21081(a)(3)(A).

## CAUSE OF ACTION

46.     The United States realleges and incorporates by reference the allegations set forth in all prior paragraphs of this Complaint.

47.     Defendants' failures to ensure the availability of at least one required accessible voting system at each polling place, as set forth above, violates Section 301 of HAVA.

48.     Unless enjoined by order of this Court, Defendants will continue to violate Section 301 by failing to ensure that all polling places are equipped with at least one accessible voting system during federal elections.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that this Court enter an order:

(1)    Declaring that Defendants have failed to ensure that the State's voting systems are accessible for individuals with disabilities by using at least one direct recording electronic voting system or other voting system equipped for individuals with disabilities at each polling place, in violation of Section 301 of the Help America Vote Act, 52 U.S.C. § 21081;

(2)    Enjoining Defendants, their employees, agents, and successors in office, and all persons acting in concert with them, from failing to ensure that a voting system equipped for individuals with disabilities is present at each polling place in the State, as required by Section 301 of HAVA, 52 U.S.C. § 21081;

(3)    Enjoining Defendants, their employees, agents and successors in office, and all persons acting in concert with them, from engaging in any act or practice that denies the rights secured by Section 301 of HAVA, 52 U.S.C. § 21081;

(4)    Directing Defendants, their agents and successors in office, and all persons acting in concert with them to take appropriate action to ensure uniform compliance with this Court's order by all entities administering the State's electoral processes, including through issuance of forms, guidance, written or verbal directives, orders, and instructions to local election officials; and

(5)    Granting such additional relief as the interests of justice may require.


Date: September 20, 2024

KRISTEN CLARKE                                    TIMOTHY M. O'SHEA
Assistant Attorney General                        United States Attorney
Civil Rights Division                             Western District of Wisconsin


*/s/ Brian Remlinger*                             */s/ Barbara L. Oswald*
R. TAMAR HAGLER                                   LESLIE K. HERJE
RICHARD A. DELLHEIM                               BARBARA L. OSWALD
BRIAN REMLINGER                                   Assistant United States Attorneys
MARGARET M. TURNER                                United States Attorney's Office
Attorneys, Voting Section                         Western District of Wisconsin
Civil Rights Division                             222 West Washington Ave, Suite 700
U.S. Department of Justice                        Madison, WI 53703
950 Pennsylvania Avenue NW                        barbara.oswald@usdoj.gov
Washington, DC 20530                              608-250-5478
brian.remlinger@usdoj.gov
202-717-4154

11