UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICAN,

    Plaintiff,

v.

TOWN OF THORNAPPLE, WISCOINSIN; ANGELA JOHNSON, RALPH C. KENYON, TOM ZELM, and JACK ZUPIN, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Thornapple; TOWN OF LAWRENCE, WISCONSIN; CHARIDY LUDESCHER, BOB NAWROCKI, STACY ZIMMER, and DUANE BILLER, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Lawrence; and STATE OF WISCONSIN,

    Defendant.

Case No.: 3:24-cv-664

---

**DEFENDANTS' TOWN OF THORNAPPLE, WISCONSIN; ANGELA JOHNSON, RALPH C. KENYON, TOM ZELM, and JACK ZUPAN MOTION TO DISMISS**

---

Defendants Town of Thornapple, Wisconsin (the "Town"), Angela Johnson,[1] Ralph C. Kenyon, Tom Zelm, and Jack Zupan (Johnson, Kenyon, Zelm, and Zupan, collectively, "Official Capacity Defendants;" Town and Official Capacity Defendants, collectively, "Thornapple Defendants"), by their counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move this Court for and order dismissing the Government's claim under Section 301 of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21081.

---

[1] Johnson resigned from her position on July 22, 2024.

1

When reviewing motions to dismiss under Rule 12(b)(6), courts are not to undertake fact-finding inquiries or weigh evidence; rather, the court is to accept all the factual allegations in a complaint as true and determine if they establish a plausible claim for relief. *One Wisconsin Institute, Inc., v. Nichol*, 155 F. Supp. 3d 898, 901 (W.D. Wis. 2015). The Government cannot meet this standard because the alleged method of casting and counting ballots in the Town does not amount to a "voting system" under HAVA as a matter of law. Furthermore, the naming of the Official Capacity Defendants is a redundancy in light of the Town being named as a Defendant, and these individuals should be dismissed from the action.

I.   THE GOVERNMENT'S CLAIM UNDER HAVA

In this action, the Government seeks to enforce Section 301 of HAVA, which, as the Government notes, "requires, among other things, that each *voting system* used in an election for federal office be accessible for voters with disabilities in a manner that provides the same opportunity for access and participation, including privacy and independence, as for other voters." (Compl. ¶ 1, emphasis added). In 2023, the Town's Board of Supervisors ("Thornapple Board") decided to discontinue the use any electronic voting equipment and rely, instead, on the use and hand counting of paper ballots.[2]

The Government asserts that Section 301 requires the Town to utilize electronic voting machines for disabled voters even though the Town does not use any electronic voting equipment in the first instance. The Government is wrong. The Government asserts that "any voting system in use on or after January 1, 2006, must include 'at least one direct recording electronic voting

---

[2] The Town's population is just 721. *See* 2020 United States Census, available at https://www.census.gov/search-results.html?q=thornapple+wisconsin&page=1&stateGeo=none&searchtype=web&cssp=SERP&_charset_=UTF-8 The Court can take judicial notice of official government records or reports such as the United States Census. *See United States v. Orozco-Acosta*, 607 F. 3d 1156, 1164 n.5 (9th Cir. 2010). Given the Town's small population, hand counting paper ballots is simple and manageable.

2

system or other voting system equipped for individuals with disabilities at each polling place.'" (Compl. ¶ 18, quoting 52 U.S.C. § 21081(b)(1)(B)). However, the Town does not use a "voting system" as that term is defined in HAVA and, thus, the above requirement cannot apply to the manner in which the Town conducts elections.

The very first line of HAVA states that "[e]ach *voting system* used in an election for Federal office shall meet the following requirements …" 52 U.S.C. § 21081(a) (emphasis added). A "voting system" is a defined term under HAVA, and at its core a "voting system" must utilize some combination of "mechanical, electromechanical, or electronic equipment." 52 U.S.C. § 21081(b). By the terms of Section (a), HAVA's voting requirements—including the disabled voter provisions at the heart of the Government's claim—are only applicable to ballot casting processes that qualify as a "voting system." Because elections in the Town involve no "mechanical, electromechanical, or electronic equipment," the Government has not, and cannot, allege that the Thornapple Defendants have violated HAVA.

Specifically, "voting system" is defined at 52 U.S.C. § 21081(b) and states as follows (emphasis added):

> (b) Voting system defined
>
> In this section, the term "voting system" means--
>
>> (1) **the total combination of mechanical, electromechanical, or electronic equipment** (including the software, firmware, and documentation required to program, control, and support the equipment) that is used--
>>
>>> (A) to define ballots;
>>> (B) to cast and count votes;
>>> (C) to report or display election results; and
>>> (D) to maintain and produce any audit trail information; **and**

3

>> (2) the practices and associated documentation used--
>
>> (A) to identify system components and versions of such components;
>> (B) to test the system during its development and maintenance;
>> (C) to maintain records of system errors and defects;
>> (D) to determine specific system changes to be made to a system after the initial qualification of the system; and
>> (E) to make available any materials to the voter (such as notices, instructions, forms, or paper ballots).

As is clear from the statutory language, Sections (b)(1) and (b)(2) are conjunctive and relate to ballot casting and counting processes that involve some "combination of mechanical, electromechanical, or electronic equipment." Antonin Scalia & Bryan A. Garner, Reading Law 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives.") (emphases in original); Loja v. Main St. Acquisition Corp., 906 F.3d 680, 683 (7th Cir. 2018). However, the Government's Complaint never alleges that the Town employed a "voting system," which is necessarily comprised of "mechanical, electromechanical, or electronic equipment." To the contrary, the Government acknowledges that the Town Board "voted to 'stop use of the electronic voting machine and use paper ballots.'" Compl. ¶ 30.

The Government alleges that two Town elections failed to comply with HAVA. First, the Complaint references an April 2, 2024, federal primary election ("April Election") and alleges the process there failed to satisfy the disabled voting standards set out in 52 U.S.C. § 21081(a)(3)(A). Compl. ¶ 34. The Complaint alleges that the Town did not utilize any equipment to accommodate disabled voters. Compl. ¶ 33. Nowhere, however, does the Government allege that the Town employed a "voting system" comprised of "mechanical, electromechanical, or electronic equipment" during the April Election.

4

The second election the Complaint references is an August 13, 2024, federal primary election ("August Election"). Compl. ¶ 36. As with the April election, the Government alleges that the Town failed to "make available any equipment" that would assist disabled voters, and that this similarly violated HAVA's standards as set out in 52 U.S.C. § 21081(a)(3)(A). Compl. ¶¶ 37-38. And, once again, the Complaint fails to allege that the Town employed a "voting system" comprised of "mechanical, electromechanical, or electronic equipment" at the August Election.

The fatal problem confronting the Government's claim is that the Town's process for casting and counting ballots involves no "mechanical, electromechanical, or electronic equipment" whatsoever. As detailed in the Declaration of Erin Webster ("Webster Decl.") submitted by the Government in support of its request for a preliminary injunction, the Town's voting process is conducted entirely by hand. The Webster Declaration establishes that ballots in the April and August Elections were marked by hand, without any machines. Webster Decl. ¶¶ 12 & 13 (April Election) and 18 (August Election). Further, the Webster Declaration confirms that no "mechanical, electromechanical, or electronic equipment" was used to count the ballots; for each election Ms. Webster simply dropped her ballots into a wooden box. Webster Decl. ¶¶ 14 (April Election) & 18 (August Election).

Furthermore, Wisconsin statutes sets out detailed requirements to ensure the needs of disabled voters are met, and the Town's process is entirely consistent with these provisions. These statutes:

- Allow disabled voters to request assistance in marking ballots (Wis. Stat. § 6.82(2)(a));

- Specify who may and may not serve as an assistant to a voter (*Id.*);

5

- Mandate that the ballot must be notated as having been completed with assistance (*Id.*);

- Set out the specific language the assistant must use when asking how he or she wishes to cast ballot (Wis. Stat. § 6.82(2)(b)); and,

- Require election officials to note that the voter cast a ballot using an assistant (Wis. Stat. § 6.82(2)(d).

Notably, Wisconsin law envisions that disabled voters will be casting ballots in jurisdictions that do not use voting machines as well as those that do, and accounts for how these respective election officials will handle such votes. Wis. Stat. § 6.82(2)(a) (reading, in pertinent part, "The selected individual [*i.e.*, assistant] shall certify on the back of the ballot that it was marked with his or her assistance. Where voting machines are used, certification shall be made on the registration list."). As to the machines themselves, Wisconsin only requires their use by municipalities with a population equal to or greater than 7,500. Wis. Stat. § 5.40(1). With a population of 721 (see footnote 2, above) the Town falls comfortably below this threshold.

While it should be noted that Wis. Stat. § 5.25(4)(a) requires a municipality's "voting system" to "permit all individuals with disabilities to vote without the need of assistance and with the same degree of privacy"[3] as nondisabled voters, this requirement neither conflicts with the

---

[3] Wis. Stat. § 5.25(4) reads as follows:

**(4)  (a)** Each polling place shall be accessible to all individuals with disabilities. The commission shall ensure that the voting system used at each polling place will permit all individuals with disabilities to vote without the need for assistance and with the same degree of privacy that is accorded to nondisabled electors voting at the same polling place. This paragraph does not apply to any individual who is disqualified from voting under s. 6.03 (1) (a).
**(b)** In any jurisdiction that is subject to the requirement under 42 USC 1973aa-1a to provide voting materials in any language other than English, the commission shall ensure that the voting system used at each polling place in that jurisdiction is in compliance with 42 USC 1973aa-1a.
**(d)** No later than June 30 of each odd-numbered year, the commission shall submit a report on impediments to voting faced by elderly and handicapped individuals to the appropriate standing committees of the legislature under s. 13.172

assistant provisions detailed above nor calls into question the Town's process. Just like HAVA, Wis. Stat. § 5.25(4)(a) is only applicable to "voting systems," which, pursuant to Wis. Stat. § 5.02(24w), is limited to the now familiar and all-important qualifying phrase, "total combination of mechanical, electromechanical, or electronic equipment."[4] Accordingly, the Town's process is both envisioned by and consistent with Wisconsin's laws ensuring that individuals with disabilities can exercise their right to vote.

By its express terms, HAVA is only applicable to "voting systems." 52 U.S.C. § 21081(a). Further, "voting systems" is a defined term within HAVA, and is limited to "mechanical, electromechanical, or electronic equipment." 52 U.S.C. § 21081(b)(1). These terms are unambiguous. It is axiomatic that when the statutory terms are clear, the analysis stops there—there is no need to examine the statute's purpose, legislative history, let alone entertain additional factors.. *See*, *e.g.*, *Boyle v. U.S.*, 556 U.S. 938 (2009) ("Because the statutory language is clear, there is no need to reach petitioner's remaining arguments based on statutory purpose, legislative history, or the rule of lenity."); *see also Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 802 (FN 3) (7th Cir. 2010), *cert den.*, 562 U.S. 1179 (2011) ("We need not explore … legislative

---

(3). In preparing its report under this paragraph, the commission shall consult with appropriate advocacy groups representing the elderly and handicapped populations.

[4] Wis. Stat. § 5.02(24w) reads as follows:

**(24w)** "Voting system" means:
**(a)** The total combination of mechanical, electromechanical, or electronic equipment, including the software, hardware, and documentation required to program, control, and support the equipment, that is used to define ballots, to cast and count votes, to report or display election results, and to maintain and produce any audit trail information.
**(b)** The practices and associated documentation for any of the following purposes:
**1.** To identify equipment components and versions of such components.
**2.** To test the equipment during its development and maintenance.
**3.** To maintain records of equipment errors and defects.
**4.** To determine specific equipment changes to be made after the initial qualification of the equipment.
**5.** To make available any materials to an elector.

history in view of the unambiguous terms of the statute.") *and F.T.C. v. Credit Bureau Center, LLC*, 937 F.3d 764, 782 (7th Cir. 2019), *vacated on other grounds*, 141 S. Ct. 810 (2020) ("an exploration of statutory purpose is no longer the Supreme Court's polestar in cases raising interpretive questions about the scope of statutory remedies … William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 81 (2016) ('We are all textualists. That means that a judge must relate all sources of and arguments about statutory interpretation to a text the legislature has enacted.').").  However, even if this Court did review HAVA's legislative history it would find that it was crafted in response to the mechanical troubles which plagued the 2000 election and was never designed to cover the manual processes used by the Town.  *See*, Help America Vote Act of 2002, PL 107–252, October 29, 2002, 116 Stat 1666, stating its intent "[t]o establish a program to provide funds to States to replace punch card voting systems..."); *see also*, Congressional Research Service, The Help America Vote Act of 2002 (HAVA): Overview and Ongoing Role in Election Administration Policy, p. 2.

HAVA's express language unequivocally limits its standards and requirements to "voting systems" which involve "mechanical, electromechanical, or electronic equipment."  Because the Government has not, and cannot, allege that the Town's process for casting and counting ballots involves "mechanical, electromechanical, or electronic equipment" the Thornapple Defendants respectfully move this Court to dismiss the Government's Complaint.

## II. OFFICIAL CAPACITY DEFENDANTS

In the present case, the claims against the Official Capacity Defendants should be dismissed as unnecessary and redundant. It is well established that a lawsuit against a government official in their official capacity is treated as a lawsuit against the governmental entity itself. As articulated in *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), an official-capacity suit is "in

all respects other than name, to be treated as a suit against the entity." This principle has been consistently applied by district courts, which routinely dismiss official capacity claims where the municipality is also a named defendant, as such claims are duplicative. *See Comsys, Inc. v. City of Kenosha Wisconsin*, 223 F. Supp. 3d 792, 802 (E.D. Wis. 2016) (The District Court dismissed official capacity claims against city officials, finding them redundant because the municipality was already a defendant). Accordingly, the Court should dismiss all claims against the individually named defendants in their official capacities, leaving the Town of Thornapple as the sole defendant in this matter.

## CONCLUSION

Because HAVA does not apply to the manual process employed by the Town of Thornapple and the inclusion of the Official Capacity Defendants is a redundancy, Defendants respectfully move this Court to dismiss the Government's Complaint.

Dated this 25th day of September, 2024.

                                        HUSCH BLACKWELL LLP
Attorneys for Defendants – Town of Thornapple, Wisconsin; Angela Johnson, Ralph C. Kenyon, Tom Zelm and Jack Zupan

By:   Electronically signed
      /s/ Eric M. McLeod
      Eric M. McLeod, 1021730
      33 East Main Street, Suite 300
      Madison, Wisconsin 53703
      608.255.4440
      608.258.7138 (fax)
      eric.mcleod@huschblackwell.com

      Rebecca C. Furdek, 1101543
      511 North Broadway, Suite 1100
      Milwaukee, Wisconsin 53202
      414.273.2100
      414.223.5000 (fax)
      rebecca.furdek@huschblackwell.com

      Richard P. Lawson
      (*Pro hac vice to be submitted*)
      America First Policy Institute
      1455 Pennsylvania Ave., N.W.
      Ste. 225
      Washington, D.C., 20004
      (813) 952-8882
      rlawson@americafirstpolicy.com