

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2931

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TOWN OF THORNAPPLE, WISCONSIN, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 24-cv-664 — **James D. Peterson**, *Chief Judge*.

ARGUED APRIL 14, 2025 — DECIDED JULY 14, 2025

Before BRENNAN, ST. EVE, and LEE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. In June 2023, the Town Board of Thornapple, Wisconsin voted to stop using electronic voting machines in elections. The Town implemented this decision in Wisconsin's 2024 federal primary elections and required voters to use paper ballots. The United States sued the Town and select Town officials in response, alleging that they failed to make at least one accessible voting system available at the Town's polling place, in violation of section 301 of the Help

America Vote Act of 2002 ("HAVA"). *See* 52 U.S.C. § 21081(a)(3)(A)–(B).

The United States also sought, and the district court granted, a preliminary injunction requiring the Town to provide a HAVA-compliant system in the November 2024 federal election. When granting the government's motion for a preliminary injunction, the district court rejected the Town's arguments that its use of paper ballots did not fall within HAVA's purview and that the government failed to demonstrate a likelihood of irreparable harm. Finding no error in the district court's analysis of these issues, we affirm.

## I. Background

Congress enacted HAVA in the aftermath of the November 2000 presidential election and "its attendant controversies." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1155 (11th Cir. 2008); *see Colon-Marrero v. Velez*, 813 F.3d 1, 9 (1st Cir. 2016). Among other aims, Congress sought "to establish minimum election administration standards" for federal elections. Help America Vote Act of 2002, Pub. L. No. 107-252 (codified at 52 U.S.C. §§ 20901 et seq. (2002)). Section 301 of HAVA, titled "Voting Systems Standards," lays out some of these minimum standards. *Id.* Pertinent here, each "voting system" used in an election for federal office shall:

> be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters[.]

52 U.S.C. § 21081(a)(3)(A). A "voting system" satisfies this requirement by providing "at least one direct recording

No. 24-2931 3

electronic voting system or other voting system equipped for individuals with disabilities at each polling place[.]" *Id.* § 21081(a)(3)(B).

The Town of Thornapple, Wisconsin previously satisfied this accessibility requirement by using a Dominion ImageCast Evolution machine. But in June 2023, the Town Board changed course and voted to stop using electronic voting machines and instead use paper ballots. The Town implemented this decision in Wisconsin's April 2024 and August 2024 federal primary elections, during which voters marked up paper ballots by hand and placed their ballots in a locked box. The Town then hand counted these ballots.

Soon after, the United States sued the Town, as well as the Town Clerk and three members of the Town's Board in their official capacities, for allegedly failing to provide "at least one direct recording electronic voting system or other voting system equipped for individuals with disabilities" at the Town's polling place. *Id.* The government also moved for a preliminary injunction requiring the Town to provide an accessible voting system in the November 5, 2024, general election, among other things.

The district court granted the preliminary injunction. It rejected the Town's argument that its paper ballots did not qualify as a "voting system" under HAVA, relying on the text and structure of section 301. It similarly rejected the Town's argument that the government failed to demonstrate irreparable harm, finding that individuals with disabilities would be "deprived of the opportunity to vote independently and privately." In reaching this latter conclusion, the district court relied on testimony from Thornapple's Chief Election Inspector Suzanne Pinnow who recounted instances where individuals

with disabilities received assistance in casting their votes. Pinnow also testified that approximately "zero to one" disabled voters cast ballots at the Town's polling place per election and that these voters had not asked to use a voting machine because they preferred receiving physical assistance from someone.

In granting the preliminary injunction, the district court directed the Town to ensure its polling place had a voting system equipped for individuals with disabilities as required by HAVA during the November 2024 election. The court's order also imposed several provisions that are ongoing to this day, including provisions prohibiting the Town from enforcing its June 2023 decision to stop using electronic voting machines and requiring that the Town ensure election officers receive appropriate training on implementing HAVA-compliant systems.

The Town now appeals the preliminary injunction, invoking our appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## II. Discussion

To secure a preliminary injunction, the government must demonstrate that it is likely to succeed on the merits of its suit, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On appeal, the Town contests only the government's likelihood of success on the merits and irreparable harm. We therefore limit our discussion to these requirements, reviewing the district court's legal conclusions de novo and findings of fact for clear error. *Int'l Ass'n of Fire Fighters, Loc. 365 v. City*

No. 24-2931                                                         5

*of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022). A finding of fact is clearly erroneous only when "we cannot avoid or ignore a definite and firm conviction that a mistake has been made" after reviewing all the evidence. *Id.* at 447 (citation modified).

**A. Likelihood of Success on the Merits**

HAVA requires that each "voting system" is "accessible for individuals with disabilities," and then elaborates on how a "voting system" can satisfy this requirement. 52 U.S.C. § 21081(a)(3)(A)–(B). The Town does not argue that its decision to withhold the ImageCast Evolution machine and provide only paper ballots meets HAVA's accessibility requirement. It instead argues that it is not subject to these provisions because its use of paper ballots does not constitute a "voting system" to which HAVA's requirements attach. The government's likelihood of success on the merits therefore turns on a narrow question of statutory construction: is the Town's paper ballot voting method a "voting system" under HAVA?

As with any question of statutory construction, we begin with the text of the statute. The context in which a statutory phrase appears and the phrase's place in the overall statutory scheme serve an essential role in our understanding of the text. *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 683 (7th Cir. 2018) (citing *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016)). We follow a "foundational principle of statutory interpretation" that the same term presumptively carries the same meaning throughout a statute. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 876 (7th Cir. 2025); *see also White v. United Airlines, Inc.*, 987 F.3d 616, 623 (7th Cir. 2021) (presuming "identical words used in different parts of

Case: 3:24-cv-00664-jdp   Document #: 47-1   Filed: 09/05/25   Page 6 of 12
Case: 24-2931   Document: 00714617715   Filed: 09/05/2025   Pages: 12

6                                                                          No. 24-2931

the same act are intended to have the same meaning" (citation modified)).

A straightforward application of these principles persuades us that the Town's use of paper ballots is a "voting system." Congress referenced "paper ballot voting systems" three times in section 301 when explaining how such a system can satisfy other provisions of HAVA. *See* 52 U.S.C. § 21081(a)(1)(B), (c)(2). These repeated references to "paper ballot voting systems" tell us that Congress views a municipality's use of paper ballots as a type of voting system in these provisions. *See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018) ("Adjectives modify nouns—they pick out a subset of a category that possesses a certain quality."). Because we presume that Congress uses a term consistently throughout a statute, Congress's use of "voting system" within the accessibility provisions should encompass "paper ballot voting systems," too. The plain text of section 301 therefore strongly counsels against the Town's assertion that HAVA does not apply to its use of paper ballots.

Section 301's definition of "voting system" adds support to our conclusion that the Town's paper balloting method is a voting system. HAVA provides that "the term 'voting system' means—"

> (1) the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used—
>
>> (A) to define ballots;
>>
>> (B) to cast and count votes;

 (C) to report or display election results; and

 (D) to maintain and produce any audit trail information; and

(2) the practices and associated documentation used—

 (A) to identify system components and versions of such components;

 (B) to test the system during its development and maintenance;

 (C) to maintain records of system errors and defects;

 (D) to determine specific system changes to be made to a system after the initial qualification of the system; and

 (E) to make available any materials to the voter (such as notices, instructions, forms, or ***paper ballots***).

52 U.S.C. § 21081(b) (emphasis added). By including "paper ballots" within the definition, Congress once again demonstrated its intent to cover paper balloting.

 The Town attempts to sidestep this express reference to paper ballots and the references to "paper ballot voting systems" by focusing on an alleged lack of "mechanical, electromechanical, or electronic equipment" in its voting method. Under the Town's reading, a "voting system" *requires* some form of this equipment because "and" connects subsection (1) about equipment with (2) about practices and associated documentation.

"And" undoubtedly "connect[s]" specified terms, but how it does so "depend[s] on context." *Pulsifer v. United States*, 601 U.S. 124, 133, 151 (2024); *see also Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 356 (4th Cir. 2020) ("*and* alone tells us little of *how* two items are to be combined"). When an introductory phrase applies "independently and equivalently" to all terms that follow, for example, "and" may mean that each term satisfies the phrase in addition to the next, rather than imposing a joint requirement. *See Pulsifer*, 601 U.S. at 133–34. We can read the introductory phrase here, "a voting system means," to do just that. That is, "a voting system means" (1) the total combination of certain equipment used throughout the voting process, and it also means (2) practices and associated documentation. The practices and associated documentation, which expressly include paper ballots, constitute a voting system with or without equipment.

Indeed, this interpretation is the only one that "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988); *see also CFPB v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024) (declining to interpret a term in a way that "frustrates the obvious statutorily articulated purpose of the statute"). Consider the Town's interpretation. The Town suggests that its use of paper ballots would constitute a "voting system" if it used mechanical, electromechanical, or electronic equipment to count ballots instead of hand counting them. During oral argument, the Town also indicated that using a printer to create ballots

No. 24-2931   9

would satisfy its perceived equipment requirement.[1] The accessibility provisions at issue, however, concern an individual's "access and participation (including privacy and independence)" when casting his or her vote. Given Congress's focus on the rights of individuals with disabilities when *casting* ballots, an interpretation of "voting system" that guarantees these rights only when certain equipment is used to *prepare* or *count* ballots makes little sense.

The broad nature of HAVA's statutory scheme also refutes the Town's interpretation. The preamble of HAVA states that it seeks "to establish minimum election administration standards," and Title III, which encompasses section 301, sets forth "uniform … requirements." Pub. L. No. 107-252. To achieve these aims, Congress set forth a broad definition of "voting system" that captures a wide array of equipment, practices, and documentation used before, during, and after the voting process. *See* 52 U.S.C. § 21081(b) (including equipment used to display results and produce audit trails, along with practices used to test a voting system during development, within the definition of "voting system"). The Town asserts that such a broad reading renders the definition superfluous, but it fails to harmonize its restrictive reading with the aim of establishing minimum and uniform standards in federal elections. We

---

[1] The record does not reflect whether the Town used a printer to create its ballots, although we are hard-pressed to imagine that the Town hand wrote each ballot.

decline to read in a loophole for hand counted paper ballots in the face of clear textual indications to the contrary.[2]

In light of Congress's express reference to "paper ballot voting systems," the broad definition of "voting system" that mentions paper ballots, and the statutory scheme, we conclude that the Town has a "voting system" under HAVA. In turn, the district court did not err in finding that the government demonstrated a likelihood of success on the merits.

**B. Irreparable Harm**

The government also has the burden of demonstrating that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. This means that the alleged harm "must be more than a mere possibility," but it does not require that the harm "be occurring or be certain to occur before a court may grant relief[.]" *Michigan v. U.S. Army Corps. of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011).[3] The Town argues that the district court erred in its application of this standard because the government has "not alleged a single

---

[2] The Town contends that its interpretation does not create a loophole because the Americans with Disabilities Act and Voting Rights Act protect accessibility in voting. The Town does not provide support for its assertion that overlapping or adjacent protection requires narrow construal of the provision at issue.

[3] The harm must also be irreparable such that it cannot be "prevented or fully rectified by the final judgment after trial." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) (citation modified), *abrogated on other grounds by Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020). The Town does not dispute the irreparable nature of the alleged harm.

No. 24-2931 11

factual basis for the belief that the Town … has disenfranchised voters."

The Town's argument misunderstands both our preliminary injunction law and the harm alleged here. As to the law, the government did not need to provide evidence that the Town has already disenfranchised voters. *See Michigan*, 667 F.3d at 788. More fundamentally, the district court did not grant the preliminary injunction based on finding past disenfranchisement. Rather, the district court found that the Town's actions would likely "deprive" individuals with disabilities "of the *opportunity* to vote independently and privately" that HAVA requires. And this requirement reflects the critical role the secret ballot occupies in our democratic system. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995) (referring to the secret ballot as "the hard-won right to vote one's conscience …"); *Burson v. Freeman*, 504 U.S. 191, 206 (1992) (describing the secret ballot as our nation's time-tested method for preserving free and fair elections). For this reason, the Town's focus on Chief Election Inspector Pinnow's testimony that individuals with disabilities prefer receiving assistance over using a machine misses the point. Anecdotal preferences do not speak to an injury that lies in a lack of choice.

Focusing on the injury of being denied the opportunity to vote privately and independently, the district court did not clearly err in its factual findings. Pinnow testified that individuals with disabilities had voted before at the Town's polling place, approximated this number at "zero to one" an election, and provided two examples of these voters receiving assistance: a blind woman relied on her daughter's assistance to fill out a ballot and a man who had suffered a stroke disclosed his vote to Pinnow so she could guide his hand to mark his

Case: 3:24-cv-00664-jdp   Document #: 47-1   Filed: 09/05/25   Page 12 of 12
Case: 24-2931   Document: 00714617715   Filed: 09/05/2025   Pages: 12

12                                                              No. 24-2931

ballot. This testimony supports the court's finding that the Town has disabled voters who need assistance when casting their vote. That the record suggests the Town's removal of an accessible option may only affect a small number of individuals does not undermine the likelihood of harm. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (explaining that a restriction on the right to vote is an irreparable injury whether there are thirty or thirty thousand impacted).

Pinnow's testimony likewise supports the court's finding that individuals with disabilities would lack the opportunity to vote privately and independently if they only had access to a paper ballot. The man telling Pinnow "who he wanted to vote for" and having her guide his hand exemplifies both a lack of privacy and independence. Even based on the limited record before us, we cannot say the district court clearly erred in finding irreparable harm.

\*   \*   \*

The judgment of the district court is

AFFIRMED.