# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF THORNAPPLE, WISCONSIN; ANGELA JOHNSON, RALPH C. KENYON, TOM ZELM, and JACK ZUPAN, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Thornapple, TOWN OF LAWRENCE, WISCONSIN; CHARIDY LUDESCHER, BOB NAWROCKI, STACY ZIMMER, and DUANE BILLER, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Lawrence, and STATE OF WISCONSIN, <br><br> Defendants. | Civil Case No.: 3:24-cv-664-jdp |

## PARTIAL SETTLEMENT AGREEMENT

### I.  INTRODUCTION

1.  Plaintiff United States of America initiated this action against the Town of Thornapple, Wisconsin ("Thornapple"); Angela Johnson, Ralph C. Kenyon, Tom Zelm, and Jack Zupan, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Thornapple (collectively, "Thornapple Defendants"); the Town of Lawrence, Wisconsin ("Lawrence"); Charidy Ludescher, Bob Nawrocki, Stacy Zimmer, and Duane Biller, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Lawrence (collectively, "Lawrence Defendants") to enforce the requirements of Section 301 of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21081.

2. The United States entered into a consent order with the Lawrence Defendants on September 27, 2024 (ECF 23).

3. This Settlement Agreement ("Settlement Agreement" or "Agreement") is entered into between Plaintiff United States of America ("United States" or "Plaintiff") and the Thornapple Defendants.

## I.    RECITALS

4. This Agreement resolves the remaining claims asserted in *United States v. Town of Thornapple et al.* (3:24-cv-664-jdp), filed in the United States District Court for the Western District of Wisconsin on September 20, 2024 to enforce HAVA.

5. Section 301 requires, among other things, that each voting system used in an election for federal office be accessible for voters with disabilities in a manner that provides the same opportunity for access and participation as other voters, including the opportunity to vote privately and independently. 52 U.S.C. § 21081(a)(3)(A). To satisfy this requirement, voting systems used in federal elections must include at least one voting system equipped for individuals with disabilities at each polling place. *Id.* § 21081 (a)(3)(B), (d).

6. Voters with disabilities are significantly more likely than other voters to experience difficulties while voting, often due to the inaccessibility of election infrastructure. For example, an audit run by the Wisconsin Elections Commission from 2022 to 2023 found an average of 5.9 accessibility problems per polling place, 44% of which were "high severity" problems, meaning they "would be likely to prevent a voter with a disability from entering a polling place and casting a ballot privately and independently." Wisconsin Elections Commission, Barriers Faced by Elderly Voters and Voters with Disabilities at 3, 7-10 (June 2023), https://perma.cc/R9H5-M6CZ.

7.     The United States' Complaint alleges, among other things, that the Thornapple Defendants did not comply with the requirements of Section 301 of HAVA. Specifically, Thornapple required its voters to use paper ballots and failed to make available a voting system that is accessible for individuals with disabilities during the April 2, 2024 and August 13, 2024 federal primary elections. The Thornapple Defendants' failure to ensure the availability of at least one required accessible voting system at each polling place violates Section 301 of HAVA.

8.     The district court granted the United States' motion for a preliminary injunction requiring Thornapple to provide a HAVA-compliant voting system in the November 2024 federal general election, and the Seventh Circuit affirmed. *United States v. Town of Thornapple et al.*, 143 F.4th 793 (7th Cir. 2025). The Seventh Circuit's opinion resolved whether Thornapple's use of paper ballots is a "voting system" within the meaning of Section 301 of HAVA.

9.     The United States and the Thornapple Defendants, through counsel, have conferred in good faith and agree that, with regards to Thornapple and the Thornapple Defendants, this action should be settled without protracted and costly additional litigation. The United States and the Thornapple Defendants therefore propose to resolve this lawsuit through the terms of this Partial Settlement Agreement.

## II.     STATEMENT OF CONSIDERATION

10.     In consideration of, and consideration with, the terms of this Agreement, the Parties will move jointly for dismissal of the United States' claims against the remaining Defendants as set forth in Paragraph 23. The Parties agree that this consideration is adequate and sufficient.

## III.    TERMS AND CONDITIONS

11.     The Thornapple Defendants, their agents, employees, contractors, successors, and all other persons representing the interest of the Thornapple Defendants will ensure their voting systems are accessible to people with disabilities as required by HAVA, and are required to ensure that Thornapple's voting systems are accessible for individuals with disabilities by using at least one direct recording electronic voting system or other voting system equipped for individuals with disabilities at each polling place in the State, for each election for federal office, as required by Section 301 of HAVA, 52 U.S.C. § 21081(a)(3)(B).

12.     The Thornapple Defendants are further enjoined from engaging in any act or practice that denies the rights secured by Section 301 of HAVA, 52 U.S.C. § 21081.

13.     The terms of this Agreement apply to all elections for federal office held in Thornapple.

14.     The Thornapple Defendants shall ensure that during elections for federal office every polling place in Thornapple has available at least one voting system equipped for individuals with disabilities as required by Section 301 of HAVA. The portion of the voting system that is equipped for individuals with disabilities at each polling place shall, for the full period that the polling place is required to be open under Wisconsin State law, be plugged into a functioning electrical outlet, turned on, and readily visible and accessible to voters. At each polling place, signage will be posted prominently containing the following language: "Accessible voting equipment that can assist any voter in marking their ballot is available for use."

15.     The Thornapple Defendants shall ensure that for future federal elections, all appropriate election officers and officials in Thornapple —including but not limited to municipal clerks, Supervisors, Election Inspectors, and Chief Election Inspectors—receive appropriate

training on how to implement HAVA-compliant accessible voting systems, update any relevant materials within their control, monitor compliance with Section 301 requirements, and take any other steps necessary to ensure the availability of at least one required accessible voting system in every polling place in Thornapple.

16.     The Thornapple Defendants shall ensure that the voting system is maintained in good working order and that all software and other updates to that system are applied in a timely fashion.

17.     Within 14 days after every federal primary and general election that occurs during the effective period of this Agreement, the Thornapple Defendants shall send a certification signed by the Town Clerk that each requirement in Paragraphs 14-16 of this Agreement was complied with during that election to Timothy Mellett at Timothy.F.Mellett@usdoj.gov or any other individual the Department of Justice may identify.

18.     Upon reasonable notice from the United States, the Thornapple Defendants shall permit a representative of the United States Department of Justice to enter any Thornapple polling place for the sole purpose of monitoring compliance with this Agreement.

19.     The Thornapple Defendants shall make available to the United States upon request any non-privileged documents created or maintained by the Thornapple Defendants regarding compliance with this Agreement or compliance with Section 301 of HAVA, including any relevant documents that the Thornapple Defendants may be required to produce or retain under Wisconsin State law.

## V.     DURATION, JURSIDICTION, AND SCOPE

20.     The Agreement shall take effect immediately upon the date of the signature of the last signatory to this Agreement ("the effective date").

21.     The Agreement and shall remain in effect from its effective date until December 31, 2026.

22.     This Agreement is final and binding between the United States and the Thornapple Defendants and their successors in office regarding the claims raised in this action.

23.     The United States will file a joint motion to dismiss this action as to the Thornapple Defendants and Defendant State of Wisconsin with prejudice within 7 days of the effective date of this agreement.

24.     Any time limits for performance imposed by this Agreement may be extended by mutual written agreement of the Parties.

25.     The provisions of this Agreement shall apply to Defendants, their officers, agents, employees, successors, and assigns.

26.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of or compliance with this Agreement prior to initiating court action.  If the United States believes that defendants have failed to perform in a timely manner any act required by this Agreement, or have otherwise not acted in conformance with any provision thereof, whether intentionally or not, the United States shall notify defendants in writing of its concerns.  Defendants shall have 15 days from the date of the United States' notification to cure the breach.

27.     If the Parties are unable to reach a resolution within 15 days, the United States may file a lawsuit for breach of this Agreement, or any provision thereof, in the United States District Court for the Western District of Wisconsin. In any such action, Defendants consent to and agree not to contest the exercise of personal jurisdiction over Defendants by this Court.

Defendants further acknowledge that venue in this Court is appropriate and agree not to raise any challenge on this basis.

28.    In the event the United States files a civil action as contemplated by Paragraph 27, above, to remedy breach of this Agreement, the United States may seek, and the Court may grant as relief, the following: 1) an order mandating specific performance of any term or provision in this Agreement; and 2) any additional relief that may be authorized by law or equity. If such a civil action is filed, Defendants expressly agree not to count the time during which this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of claim preclusion, issue preclusion, statute of limitations, estoppel, laches, or similar defenses.

29.    Failure by the United States to enforce any provision of this Agreement shall not operate as a waiver of the United States' right or ability to enforce any other provision of this Agreement.

## VI.    EXECUTION

30.    Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

31.    This Agreement constitutes the complete agreement among the Parties. No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

32.    The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons indicated below.

33. Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another Party, the performance of one Party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another Party.

34. This Agreement is a public document. All Parties consent to the United States' disclosure of this Agreement and information about this Agreement, to the public.

35. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

36. This Agreement may be modified only with the written consent of the Parties. Any modifications must be in writing and signed by the Parties through their authorized representatives.

## VII. COSTS OF LITIGATION

37. All Parties shall be responsible for their own attorney's fees and costs associated with this action.

## VIII. TERMINATION OF LITIGATION HOLD

38. The Parties agree that, as of the effective date of this Agreement, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint. To the extent that any of the Parties previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, they are no longer required to maintain such a litigation hold. Nothing in this Paragraph relieves any of the Parties of any other obligations imposed by this Agreement.

For Plaintiff United States of America:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

CHADWICK M. ELGERSMA
Acting United States Attorney
Western District of Wisconsin


/s/Timothy Mellett
ERIC NEFF
TIMOTHY F. MELLETT
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Dated: December 11, 2025

/s/ Barbara Oswald
BARBARA L. OSWALD
Assistant United States Attorney
United States Attorney's Office
Western District of Wisconsin
222 West Washington Ave, Suite 700
Madison, WI 53703
Dated: December 11, 2025

For Thornapple Defendants:

/s/Nicholas Wanic
NICHOLAS J. WANIC
Associate Attorney
Center for Litigation
America First Policy Institute
1455 Pennsylvania Ave NW, Suite 225
Washington, DC 20004
Dated: December 12, 2025